*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0129P (6th Cir.)
File Name: 01a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　*Plaintiff-Appellee,*

　　　*v.*

GREGORY LAMONT HARDIN,
　　　*Defendant-Appellant.*

No. 99-6662

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 99-00036—Thomas G. Hull, District Judge.

Argued: March 13, 2001

Decided and Filed: April 23, 2001

Before: COLE and GILMAN, Circuit Judges; BORMAN,
District Judge.[*]

---

## COUNSEL

**ARGUED:** Edward L. Kershaw, LEONARD & KERSHAW,
Greeneville, Tennessee, for Appellant. Dan R. Smith,
ASSISTANT UNITED STATES ATTORNEY, Johnson City,

---

[*] The Honorable Paul D. Borman, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

Tennessee, for Appellee. **ON BRIEF:** Edward L. Kershaw, LEONARD & KERSHAW, Greeneville, Tennessee, for Appellant. Dan R. Smith, ASSISTANT UNITED STATES ATTORNEY, Johnson City, Tennessee, for Appellee.

———————

**OPINION**

———————

BORMAN, District Judge. Defendant-Appellant Gregory Lamont Hardin, convicted of narcotics and firearms charges, appeals the district court's sentencing decision to increase his offense level by four levels pursuant to United States Sentencing Guideline (U.S.S.G.) § 2K2.1(b)(5),[1] after concluding that Defendant possessed a firearm "in connection with" another felony offense.

This Court affirms the district court's determination that the United States had proved by a preponderance of the evidence that Hardin possessed a firearm in connection with another felony offense, to wit, possession with intent to distribute narcotics.

## *BACKGROUND*

On June 16, 1999, Defendant Hardin was charged in a seven count indictment with four counts of distributing cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1), one count of possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1), and two counts of being a felon in possession of a firearm/ammunition in violation of 18 U.S.C. § 922(g). On September 20, 1999, Defendant pleaded guilty to six of the seven counts: all four counts charging distribution of cocaine, the single count charging possession with intent to distribute cocaine, and a

———————

[1] U.S.S.G. § 2K2.1(b)(5) states: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels."

was a rifle for hunting, or (3) it was located in a closet, is not of significance to this discussion. The point we believe worth noting is that insofar as the Sentencing Commission has determined that the presence of a firearm in a home under a drug conviction does not *ipso facto* support application of a § 2D1.1 enhancement, so too the presence of drugs in a home under a firearm conviction does not *ipso facto* support application of a § 2K2.1(b)(5) enhancement. We believe that in each situation the district judge must make a finding after examining the facts of that specific case.

### *CONCLUSION*

The district court concluded that it was "satisfied that the government has satisfied its burden of proof that the gun in this case was possessed 'in connection' with the cocaine being held for distribution." We agree.

The decision of the district court to apply the Sentencing Guideline enhancement in § 2K2.1(b)(5) is AFFIRMED.

single count charging felon in possession of a firearm. The second felon in possession count, involving ammunition, was dismissed at the sentencing.

According to the agreed-upon factual basis for the plea to the four distribution counts (Counts 1-4), on the dates of October 22, October 30, November 4, and November 17, 1998, the defendant distributed cocaine hydrochloride to a confidential informant.

The factual basis for the other counts arose out of the simultaneous arrest of the defendant and search of his home on May 28, 1999. When law enforcement agents arrested Defendant, he and his wife were located in the bedroom. Defendant's wife consented to a search of the house, during which the agents found the following items in the bedroom: cocaine hydrochloride (Count 5: possession with intent to distribute cocaine), a Smith and Wesson .9mm pistol (Count 6: felon in possession of a firearm), and two ammunition magazines each containing seven rounds (Count 7: felon in possession of ammunition). According to the Presentence Investigation Report (PSR), the gun was found on a nightstand; a bag of marijuana was next to the gun; and the 54 grams of cocaine were also located in the bedroom. The gun was registered to Defendant's wife, Aimee Hardin.

Because Defendant's instant conviction involved pleas to multiple counts, and different criminal statutes, the U.S.S.G. requires grouping of the counts, using the most serious offense as a starting point. U.S.S.G. § 3D1.1. In the instant case, the PSR listed Count Six, Possession of a Firearm as a Convicted Felon under 18 U.S.C. § 922(g), as the most serious offense. The guideline applicable to 18 U.S.C. § 922(g) is § 2K2.1(a)(4)(A), Unlawful Possession of Firearms or Ammunition, which states: "Base Offense Level . . . 20, if – (A) the defendant had one prior felony conviction of either a crime of violence or a controlled substance offense." Defendant's prior conviction was for attempted second degree murder; he had served eight years in prison.

The PSR recommended that Defendant receive a four level increase under U.S.S.G. § 2K2.1(b)(5) for possessing the gun in connection with another felony offense, to wit, narcotics. Defendant filed a timely objection to the proposed four level enhancement, asserting that there was no evidence that he had possessed or used the gun in connection with his drug distribution. Defendant further contended that it was significant that the gun was not owned by him and was merely coincidentally present.

The Government argued that the fact that Mr. Hardin had pled guilty to both possession with intent to distribute cocaine, and to being a felon in possession of a handgun – occurring on the same date, in the same room, at the same time – was sufficient to establish that he had used the gun in connection with a felony.

After conducting a sentencing hearing on November 29, 1999, the district court, citing *United States v. Covert*, 117 F.3d 940 (6th Cir. 1997), held that the Government had carried its burden of proof:

The undisputed facts are that, at the time of Mr. Hardin's arrest, the gun was found on the night stand beside Mr. Hardin's bed and the cocaine was stored in the same room.

The district court also found that Defendant had presented no evidence to show that the connection between the firearm and the narcotics was clearly improbable. The district court applied the four-level enhancement to Defendant's offense level under § 2K2.1(b)(5) to create a guideline sentencing range of 46-57 months, and sentenced him to forty-six months of incarceration. Defendant timely appealed from the final judgment.

Defendant's "Summary of the Argument" on appeal states that:

No evidence was ever offered by the government that the firearm was used in connection with the drug offenses.

in the master bedroom along with three magazines and approximately fifteen live rounds), *cert. denied*, 519 U.S. 858 (1996); *Henry* [cited in footnote 9 discussed *supra*] (court stated in a § 924(c) conviction that "'possession' [of a firearm] can be constructive as well as actual, and thus may be wholly passive conduct") (cited approvingly in *Woods*, which involved a sentence enhancement pursuant to § 2K2.1(b)(5)).

*Id*. Finally, the closing paragraph of *Covert* applies

the fortress theory in the context of § 2K2.1(b)(5) enhancements, because the fortress theory requires that the firearm controlled or owned by the defendant be "in his actual or constructive possession" and "be used to protect the drugs or otherwise facilitate a drug transaction." *Henry*, 878 F.2d at 944.

*Id*. The application of the fortress theory does not require (1) evidence that Defendant distributed drugs from the bedroom, or (2) that he carried the gun with him when he made his drug sales.

In the instant case, the defendant's positioning his stash of 54.4 grams of cocaine and a 9MM semi-automatic in his bedroom supports application of the fortress theory and our decision to affirm the district court's finding that "the government has satisfied its burden of proof that the gun in this case was possessed 'in connection' with the cocaine being held for distribution."

We do not hold that the existence of a firearm and narcotics in a room automatically mandates the application of § 2K2.1(b)(5). Indeed, we note that § 2D1.1, a related guideline in the area of firearms and narcotics, clearly states in its Application Note 3 that in at least one situation – where a defendant arrested at his residence has an unloaded hunting rifle in the closet – that enhancement for possession of firearms under a narcotics conviction would not apply. Whether the key factor in the Sentencing Commission's thinking was that (1) an unloaded rifle was involved, (2) it

charged with a drug offense, developed the "fortress analogy" or emboldenment theory. That theory holds that "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." *United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989).

In the instant case the fortress analogy fits the scenario: large stash of cocaine, and a readily available 9MM semi-automatic gun to protect the stash. It "reasonably appears" that the gun was there to be used, *inter alia,* to protect the cocaine. While it may not be uncommon for people to keep weapons in their bedrooms out of a general concern for personal safety, it is not common for people to stash a large supply of drugs in the bedroom where they have their firearm at the ready. The defendant chose the location for the drugs and the gun – and that combination provides the factual support for this enhancement.

The *Covert* opinion notes that the Sixth Circuit joins other circuits in continuing to apply the fortress/emboldenment theory for purposes of guideline sentencing:

> Our holding today is also in accord with other circuits that have addressed the issue and have found that Bailey does not affect the fortress or emboldenment theory for purposes of the sentencing guidelines.

*Id*. at 948.

*Covert* cites *United States v. Hill*, discussed *supra*, on another issue, which involved a factual scenario analogous to the instant case:

> See also *United States v. Hill*, 79 F.3d 1477, 1485-86 (6th Cir.) (enhancement for possession of a firearm appropriate where officers found drugs in the bathroom and a semi-automatic pistol in the top drawer of a dresser

The Government relied solely upon the fact that the gun and drugs were in the same room. Nevertheless, the defendant was enhanced four-levels for using or possessing a firearm ***in connection with*** another felony offense apparently simply because the gun was present near the cocaine.

(Emphasis in original). Essentially, Defendant contends that the government must prove that the firearm served some purpose with respect to the felonious conduct – that its presence in the room with the drugs was not merely coincidental.

The Government contends that since the defendant pled guilty to simultaneously possessing a firearm and distributing cocaine, at the same time and place, and on the same date, it has satisfied its burden of proving that Defendant used the gun in connection with a felony. The Government cites to this Court's prior decision in *United States v. Covert*, 117 F.3d 940 (6th Cir. 1997), in which a gun containing the defendant's fingerprints was discovered in a container of marijuana.[2]

### STANDARD OF REVIEW

This Court has established the following standard for reviewing a district court's sentencing decision:

---

[2]In *Covert*, the defendant/prior felon also argued that possession of a gun by a person who has committed another felony should not trigger the sentence enhancement because of the Supreme Court decision in *Bailey v. United States*, 516 U.S. 137 (1995). This Court found, however, that *Bailey* did not affect this application of the sentencing guidelines, and upheld the decision of the district court to enhance the defendant's offense level under § 2K2.1(b)(5):

> [T]he Supreme Court in *Bailey* only addressed the meaning of the term "use" in 18 U.S.C. § 924(c), not the term "possessed" contained in USSG. § 2K2.1(b)(5). . . .
> [T]he Supreme Court in *Bailey* . . . stated that the term "possess" used in sentencing guideline sections, such as 2K2.1(b)(5), sweeps more broadly than the word "use."

*Covert*, 117 F.3d at 947 (citation omitted).

[T]his court will disturb the underlying factual findings only if they are clearly erroneous. 18 U.S.C. § 3742(e). Furthermore, the court of appeals must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). However, "[w]hether the facts found by the district court warrant the application of a particular guideline provision is a legal question and is to be reviewed de novo by the appellate court." Thus, in analyzing whether the 1991 drug conviction should count as relevant conduct, we review the district court's determination de novo.

*United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir.), *cert. denied*, 519 U.S. 858 (1996) (citations omitted); *accord United States v. Mise*, 240 F.3d 527, 530-31(6th Cir. 2001). In *United States v. Sanders*, 162 F.3d 396 (6th Cir. 1998), we applied the standard of de novo review in interpreting different wording contained in § 2K2.1(b)(5): "another felony offense."

The instant appeal involves a legal interpretation of the guideline term "in connection with," insofar as the district court was required to apply the facts to that term, which is not defined in the guidelines. Under Sixth Circuit precedent, we would review de novo the district court's decision to apply the enhancement under § 2K2.1(b)(5).

However, the recent unanimous Supreme Court decision, *Buford v. United States*, __ U.S. __, 101 S. Ct. 1276 (2001), while self-described as raising a "narrow question of sentencing law," may well apply to the instant situation. The *Buford* opinion opened with the following language:

This case raises a narrow question of sentencing law. What standard of review applies when a court of appeals reviews a trial court's Sentencing Guideline determination as to whether an offender's prior convictions were consolidated, hence "related," for purposes of sentencing? In particular, should the appeals court review the trial court's decision deferentially or *de*

---

In the instant case, we apply the *Covert* precedent to affirm the decision of the district court to apply the § 2K2.1(b)(5) enhancement to Defendant's offense level in determining his sentencing range.

*Covert* recognizes that the Sixth Circuit has "analogized the application of § 2K2.1(b)(5) to the application of 18 U.S.C. § 924(c) in *United States v. Woods*, No. 94-1992, 1995 WL 428334, n. 10 (6th Cir.) (unpublished), *cert. denied*, 516 U.S. 998 (1995) . . . ." In footnote 10, the *Covert* opinion states:

In *Woods* we held that the nexus between the weapons and the drugs in a conviction existed under the fortress theory adopted in Henry where the defendant was keeping marijuana cigarettes for sale in his bedroom where he also had weapons and ammunition.

*Covert*, 117 F.3d at 947 n.10.

In the instant case, the fortress theory applies. The defendant, an admitted distributor of drugs in small amounts, kept his stash of cocaine and his 9MM gun in the bedroom; and the gun was right next to the bed, for easy access. Granted that there was no evidence that Defendant sold cocaine from the bedroom; however, it cannot be denied that the bedroom was the stash location for the cocaine, and that a readily accessible firearm was there if needed to protect the cocaine.

The *Covert* opinion discusses the applicability of the "fortress theory" when applying § 2K2.1(b)(5):

[Covert] argues that the Supreme Court's decision in *Baily v. United States*, 516 U.S. 137 (1995), calls into question the use of the "fortress theory" when applying § 2K2.1(b)(5). Covert's argument is without merit.

*Id*. at 946-47. Footnote 9 of the opinion states:

The courts, in dealing with cases involving firearms found on premises under the control of a defendant

"weapon's physical proximity to narcotics may be sufficient to provide the nexus required between the weapon and drug charges." *Id*. at 423, quoting *United States v. Gomez-Arrellano*, 5 F.3d 464, 466-67 (10th Cir. 1993).

*Regans*, 125 F.3d at 686.

Other circuit courts of appeal, in similar situations, have concluded that the defendant possessed/used the gun "in connection with" another felony.

In *United States v. Wyatt*, 102 F.3d 241, 243 (7th Cir. 1996), the Seventh Circuit Court of Appeals was faced with a situation in which police searched the defendant's home and found a short-barreled rifle on the floor in the defendant's wife's bedroom and a handgun in the closet under some clothes or a box. Both of the firearms were dusty and dirty, and appeared as if they had not recently been used. *Id.* No drugs were found at the home, although drug paraphernalia was found two to three feet outside the bedroom. The defendant did admit to engaging in drug transactions at his home. *Id.* The court found that the guns were not merely coincidental to the sale of drugs. *Id.* at 248. Rather, it found that it was well known that guns, especially the types of guns found, were tools of the trade in the drug dealing business. *Id.*

In *United States v. Johnson*, 60 F.3d 422 (8th Cir. 1995), the police found a loaded gun, drugs, and drug paraphernalia in the room in which the defendant was arrested. The defendant objected to the sentence enhancement for using a gun in connection with a felony, arguing that mere possession of both a gun and drug paraphernalia did not constitute possession of a firearm for the purposes of § 2K2.1(b)(5). *Id.* at 423. However, the court held that the proximity between the weapon and the drug paraphernalia was enough to prove that the defendant had used a gun in connection with another felony. *Id.*

*novo*? We conclude, as did the Court of Appeals, that deferential review is appropriate, and we affirm.

*Id.* at 1278. In the instant case, we are reviewing a trial court's guidelines determination of whether the defendant's possession of narcotics was "in connection with" his firearm conviction. There is a significant similarity between the two case scenarios – application of uncontested facts to guideline language, "related" (*Buford*) and "in connection with" (*Hardin*, the instant case). Indeed, the word "related" is a synonym for "connection," and vice versa. ROGET'S THESAURUS II, EXPANDED ED. at 203 (connection), 815 (related) (1988).

In *Buford*, the district court decided, with regard to the prior convictions, "that the drug case and the robbery cases had not been consolidated for sentencing, either formally or functionally." *Id*. at 1279. The Court of Appeals reviewed the District Court's decision deferentially, rather than de novo, and affirmed. The Supreme Court affirmed the Court of Appeals:

> In light of the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court, and the limited value of uniform court of appeals precedent, we conclude that the Court of Appeals properly reviewed the District Court's "functional consolidation" decision deferentially.

*Id*. at 1281. The instant case involves a fact-bound legal decision. There is greater expertise in the district court, which has experienced many sentencings requiring similar fact-bound determinations – whether the location of certain contraband was connected to the location of the evidence forming the basis for the conviction is one such situation. Finally, we believe that in the instant case, as in *Buford*, there is "limited value of uniform court of appeals precedent" on the specific factual scenario; that a quantity of cocaine seized in a bedroom is present "in connection with" a firearm located on a bedstand in that bedroom, where the defendant was found in bed. Thus, it appears that all three reasons that the

Supreme Court utilized to support the *Buford* decision to apply the deferential standard, apply to the instant appeal from the district court's guideline determination.

The *Buford* Supreme Court decision concerned "functional consolidation" of prior convictions under Guideline §§ 4A1.2(a)(2), 4B1.1, and 4B1.2(c): whether the prior convictions were to be counted separately in determining whether the defendant was a "career offender."

The Supreme Court stated:

> the relevant federal sentencing statute requires a reviewing court not only to "accept" a district court's "findings of fact" (unless "clearly erroneous"), but also to "give *due deference* to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (emphasis added). And that is the kind of determination – application of the Guidelines to the facts – that is at issue here. Hence the question we must answer is what kind of "deference" is "due." And, as we noted in *Koon v. United States*, 518 U.S. 81, 98 (1996), the "deference that is due depends on the nature of the question presented."

*Id.* at 1279. In applying the deferential standard to the district court determination in *Buford*, the Supreme Court set forth the following justification:

> In *Koon*, we based our selection of an abuse-of-discretion standard of review on the relative institutional advantages enjoyed by the district court in making the type of determination at issue. . . . We concluded there that the special competence of the district court helped to make deferential review appropriate. And that is true here as well. That is to say, the district court is in a better position than the appellate court to decide whether a particular set of individual circumstances demonstrates "functional consolidation."

Hearing, Joint App. Vol. I, at 41. Thus, there was close proximity of the gun to the defendant, and easy access.

The fact that the firearm was found in the same room where the cocaine was stored can lead to the justifiable conclusion that the gun was used in connection with the felony.[3] This Court has held many times that guns are "tools of the trade" in drug transactions. *United States v. Arnott*, 704 F.2d 322, 326 (6th Cir. 1983); *see also United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993) (stating that evidence of firearms tended to prove the existence of a drug conspiracy); *United States v. Hatfield*, 815 F.2d 1068 (6th Cir. 1987) (stating that weapons are evidence of an intent to distribute drugs).

The Eighth Circuit noted that connection between drugs and guns in *United States v. Regans, supra*:

> We have frequently observed that a firearm is a "tool of the trade" for drug dealers . . . . [W]e affirmed a § 2K2.1(b)(5) enhancement in *United States v. Johnson*, 60 F.3d 422 (8th Cir. 1995), a case in which a drug dealer was arrested with a firearm, crack cocaine, and drug paraphernalia in his home. We commented that a

---

[3] In one of the few cases in which this Court has overturned a decision by the district court to enhance a defendant's sentence offense level under § 2K2.1(b)(5), the Court held that the drugs were not found in close enough proximity to the illegal firearms. *United States v. Gragg*, 145 F.3d 1334, 1998 WL 199816, **2 (table) (unpublished decision) (6th Cir. Apr. 14, 1998). In *Gragg*, two illegal firearms were found in the defendant's first floor living room, marijuana plants were found in the attic, marijuana seeds, other marijuana growing paraphernalia, and legal firearms were found in a second floor room, a revolver was found in his barn, and marijuana was discovered growing in a field next to the residence. *Id.* at **1. Gragg pled guilty to unlawfully possessing the two firearms that were found in the living room. In overturning the district court's decision to apply the sentencing enhancement, the Court held that the district court erred in finding that the illegal firearms were found in close proximity to the drugs. *Id.* at **2. In the instant case, however, the drugs were found in the same room with the firearm. Order of the District Court, Joint App. Vol. I, at 35.

This Court has also drawn an analogy between § 924(c)(1) and § 2K2.1(b)(5), although it has not held specifically that the phrase "in connection with" has the same meaning as the one "in relation to." *See Covert*, 117 F.3d at 947; *see also United States v. Woods*, 61 F.3d 904, 1995 WL 428334 (table) (unpublished decision) (6th Cir. July 19, 1995). Additionally, the word "possession" has a broader scope than the word "use." *Covert*, 117 F.3d at 947.

Section 2K2.1(b)(5) does not require that a defendant have used the gun; it is enough that a defendant possessed the gun in connection with any felony. Possession can be actual or constructive. Constructive possession occurs when a person "'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Covert*, 117 F.3d at 948 (quoting *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984)).

Therefore, although the instant Defendant was not in actual possession of the gun, § 2K2.1(b)(5) can be applied to enhance his sentence if he was in constructive possession of the gun in connection with another offense. Defendant admitted that he was, at least, in constructive possession of the gun when he pled guilty to being a felon in possession of a firearm. As a result, he cannot now claim that the district court erred, on that finding, in applying § 2K2.1(b)(5) to enhance his sentence. That Defendant contends that the gun was registered to his wife, Aimee Hardin, and was purchased in order to protect her, does not undermine this constructive possession analysis. It is possible that the gun was used both to protect his wife and to further his drug business. Possession need not be exclusive, it can be joint. *Id.* The fact that Defendant did not own the gun is irrelevant, since the issue is not ownership, but possession.

At the district court sentencing hearing, on November 29, 1999, counsel for appellant noted that the district court had previously issued an order finding that the gun and a bag of marijuana were on the nightstand next to the bed Defendant and his wife were sleeping in when the search occurred. Sent.

*Id.* at 1280 (citations omitted). The Supreme Court thereafter elaborated on factors that support its decision to apply the deferential standard to the district court determination:

> [A]s a sentencing judge who must regularly review and classify defendants' criminal histories, a district judge is more likely to be aware of which procedures the relevant state or federal courts typically follow. Experience with trials, sentencing, and consolidations will help that judge draw the proper inferences from the procedural descriptions provided.

*Id*.

In the instant case, the significant issue before this Court is whether the district judge properly determined that cocaine found in a bedroom along with a firearm was possessed "in connection with" the firearm. That decision required the district judge to determine the facts relating to the seizure of the gun and cocaine, and apply those facts to the Guideline term "in connection with." Here the facts were undisputed as to the location of the gun and the cocaine. Thus, the sole issue before the district court was whether the facts supported the application of the particular guideline provision. As to this determination, we conclude that, as in *Buford*, the district court enjoys institutional advantages and special competence that support the application of a deferential review standard.

Thus, the determination before the district court which sentenced Hardin was very similar to the one before the district court in *Buford*: "Buford argues that the nature of the question presented here – applying a Sentencing Guidelines term to undisputed facts – demands no deference at all." *Id*. The Supreme Court disagreed, unanimously. A similar situation is present in the instant case – applying guideline § 2K2.1(b)(5) "in connection with," to undisputed facts. Indeed, the correlation between the relevant terms in each case is close to identical: "in connection with," and "related." Accordingly, we would be inclined to conclude that under *Buford*, the proper standard of review of the district court

guideline determination in this case would be deferential rather than de novo.

However, since *Buford* was decided after oral argument in the instant case, and therefore the parties were not afforded an opportunity to brief and argue this issue, we will not decide the specific applicable standard of review, because under either standard of review, de novo or deferential, Hardin cannot establish that the district court's application of the enhancement under § 2K2.1(b)(5) was improper.

### DISCUSSION

Because Defendant challenged the application of the four level enhancement pursuant to U.S.S.G. § 2K2(b)(5), the district court was required to make the following determination:

Under Fed.R.Crim.P. 32(C)(1), the sentencing court is required to either make a finding on each matter controverted or determine that no finding is necessary because the matter will not affect sentencing. This Court requires literal compliance with Rule 32(C)(1).

*United States v. Hurst*, 228 F.3d 751, 760 (6th Cir. 2000).

Guideline § 2K2.1(b)(5) provides that "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense," his base offense level should be increased by four levels. This section can only apply if the Government establishes by a preponderance of the evidence that the defendant possessed or used a gun in connection with another felony.

The PSR states in paragraph 25:

In the present offense, the defendant was also charged with Distribution of Cocaine Hydrochloride and Possession with the Intent to Distribute Cocaine Hydrochloride. Since the drugs and the gun were found in the same room, four levels are added.

Circuit noted in *United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997):

Adopting an ordinary meaning approach, most circuits have concluded that the phrase "should be construed as equivalent to the 'in relation to' language of 18 U.S.C. § 924(c)(1)." *United States v. Spurgeon*, 117 F.3d 641, 643-44 (2d Cir. 1997), and cases cited. Equating the two is convenient because the Supreme Court has clarified the meaning of "in relation to" in § 924(c)(1):

The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. . . . Instead, the gun at least must "facilitat[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

*Smith v. United States*, 508 U.S. 223, 238 (1993).

Indeed, there appears to be a court of appeals consensus on this issue:

[A] consensus in the circuits has developed on the matter. The First, Fourth, Seventh, Ninth, and Tenth Circuits have held that the "in connection with" language of § 2K2.1(b)(5) should be construed as equivalent to the "in relation to" language of 18 U.S.C. § 924(c)(1).

*United States v. Spurgeon*, 117 F.3d 641, 643-44 (2d Cir. 1997) (citations omitted). In *Spurgeon*, the Second Circuit Court of Appeals stated that as long as the presence of the gun was not a mere coincidence but played some role in the felony, an enhancement under § 2K2.1(b)(5) was appropriate. *Id.* at 644. In that case, the firearm was found underneath the defendant's bed in a bag which also contained ammunition and a scale used for measuring drugs. *Id.* at 643. According to the Second Circuit, the presence of the gun in the bag with drug paraphernalia was enough to prove that the gun was used in relation to a felony.

weapon during the commission of a drug offense, § 2K2.1(b)(5) deals with possession of a weapon "in connection with" another felony offense.

In examining each of these Guideline provisions, we note the following distinctions. First, Guideline § 2K2.1 requires the district judge to determine only whether the government has satisfied its burden of proof that the gun was possessed "in connection with" the felony drug offense. There is no language in this Guideline or its Commentary, comparable to § 2D1.1, that shifts an evidentiary burden to the defendant to establish that the weapon was not connected with the offense.

Second, we note the difference in the proof required under § 2D1.1(b)(1) and § 2K2.1(b)(5). Under § 2D1.1(b)(1), the government must prove that a firearm "was possessed" during the commission of the offense. Further, Application Note 3 also requires the government to prove that "the weapon was present." Once these proofs are established by the government, per *Hill*, "a presumption arises that such possession was connected to the offense." *Hill*, 79 F.3d at 1485 (quoting *United States v. Sanchez*, 1450, 1460 (6th Cir. 1991)). On the other hand, § 2K2.1(b)(5) requires the government to come forward with additional proof – that the firearm was possessed "in connection with another felony offense." There is no presumption in § 2K2.1(b)(5) that the defendant's possession was "in connection with" the other felony offense.

In the instant case, although the district court referred to *Hill*, a § 2D1.1 case, and would have allowed the defendant to present a "clearly improbable" defense, we conclude that the evidence was still sufficient for the government to establish a § 2K2.1(b)(5) enhancement – that the firearm was possessed "in connection with" the narcotics offense. The district court made the findings necessary to apply the § 2K2.1(b)(5) enhancement.

While recognizing that the Sentencing Guidelines do not attempt to define the term "in connection with," the Eighth

Additionally, the PSR states in paragraph 13:

> The defendant is being held accountable for a total of 57.5 grams of cocaine hydrochloride, which includes the 3.1 grams in total sales and 54.4 grams, which was confiscated from the defendant's residence at the time of his arrest.

Defendant filed an objection to the PSR application of the four level enhancement in Paragraph 25, stating:

> In the case at bar, the Government has only shown that a gun was coincidentally present and nothing more. In fact, the Government has conceded that the Defendant was naked at the time of his arrest and did not have any weapons on his person. Thus, the presence of any gun was nothing more than coincidence and the Guideline enhancement is not applicable.

Thus, Defendant does not dispute the facts in the PSR, that the cocaine and the gun were in the room with him at the time of his arrest. Rather, Defendant contends that in order to prove that he used the gun "in connection with" a drug offense, the Government must present additional evidence – perhaps that he had both the gun and the cocaine on his person, or that he was holding the gun while selling the cocaine, or that he confessed that he was using the gun to protect the cocaine. We do not read the term "in connection with" to require additional evidence beyond that presented here.

The Court recognizes that Sixth Circuit precedent does not, *ipso facto*, support the application of the 2K2.1(b)(5) enhancement merely upon proof that narcotics and firearms were present in the same residence, or even in the same room. There could be a factual scenario such as that noted in an analogous guideline situation in § 2D1.1 (discussed *infra*) where the firearm is an unloaded hunting rifle located in a closet, and the enhancement might not apply. However, the facts established in the instant case provide a more

compelling situation. Here the gun and the drugs were in plain view, and the gun was located next to Defendant's bed.

The Order of the district court denying Defendant's objection to the "four-level increase to his total offense based upon U.S.S.G. § 2K2.1(b)(5)" stated:

> The undisputed facts are that, at the time of Mr. Hardin's arrest, the gun was found on the night stand beside Mr. Hardin's bed and the cocaine was stored in the same room. While not exactly on point with the facts of *United States v. Covert*, 117 F.2d 940 (6th Cir. 1997) (where the gun in question was found in the same container as the drugs), the Court is satisfied that the government has satisfied its burden of proof that the gun in this case was possessed "in connection" with the cocaine being held for distribution.

Initially, we note that in this Order, the District Court satisfied Rule 32(c)(1), by making a finding on the matter controverted by Defendant. Secondly, while the facts in the instant case are not as compelling as those in *Covert*, we conclude that the district court's decision to apply the enhancement is nonetheless supported by *Covert*. Here, the district court applied the four level base offense enhancement pursuant to § 2K2.1(b)(5), because the defendant, the cocaine, and the gun, were all present in the same room. We reiterate that Defendant had pleaded guilty to both possession with intent to distribute that cocaine, and possession of that gun at the same time, in the same room. The instant facts support application of the enhancement.

In its Order, issued after the sentencing hearing, the district court erroneously referred to *Hill v. United States*, 79 F.3d 1477 (6th Cir. 1996), as setting forth the test for determining the applicability of the instant enhancement:

> According to the teachings of *United States v. Hill*, 79 F.3d 1477 (6th Cir. 1996), the government must establish that the defendant actually or constructively possessed the weapon and that such possession was during the

commission of the offense. Once that has been established, the burden shifts to the defendant to show that it is "clearly improbable" that the weapon was connected to the offense.

In fact, *Hill* did not deal with the instant situation – consideration of the § 2K2.1(b)(5) enhancement of a gun conviction in connection with the felonious possession of narcotics. *Hill* dealt with a different Guideline provision, § 2D1.1, that provides for an enhancement of a narcotics conviction offense level for firearm possession. More significant to this discussion is the fact that § 2D1.1 applies a burden-shifting component that is not present in § 2K2.1(b)(5).

Guideline § 2D1.1(b)(1) provides for a two level increase in the offense level "if a dangerous weapon (including a firearm) was possessed. . ." during the commission of a felony drug offense. Application Note 3, located in the Commentary to § 2D1.1 states, in pertinent part:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, *unless it is clearly improbable that the weapon was connected with this offense*. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

United States Sentencing Commission Guidelines Manual § 2D1.1, Commentary, Application Note 3, at 111 (2000 ed.) (emphasis added).

Guideline § 2D1.1(b)(1) is directed at an individual convicted of a narcotics offense while in possession of a weapon. Guideline §2K2.1, the flip side of the guns and drugs scenario, is directed at an individual convicted of a firearms offense, who possessed that firearm in connection with another felony offense, i.e., distribution of narcotics. Thus, while § 2D1.1(b)(1) deals with possession or presence of a