UNITED STATES of America, Plaintiff–Appellee,

v.

Leon HEADRICK, Defendant–Appellant.

No. 02–6123.

United States Court of Appeals, Sixth Circuit.

June 11, 2004.

Gregg L. Sullivan, Asst. U.S. Attorney, U.S. Attorney's Office, Chattanooga, TN, for Plaintiff–Appellee.

Steven H. Sadow, Atlanta, GA, for Defendant–Appellant.

Before BOGGS, Chief Judge, KENNEDY, Circuit Judge, and RUSSELL, District Judge.*

PER CURIAM.

Mr. Leon Headrick appeals the district court's denial of his motion for downward adjustment based on his status as a "minor participant" in the criminal activity and on the application of the sentencing guidelines' "safety valve" provision.

I.

Mr. Headrick owned a house at 3354 Adkins Road in Tiftonia, Tennessee. Police officers searched the house and discovered a methamphetamine laboratory in its basement. Mr. Headrick did not live in the house at the time; Mr. Guffey, his co-defendant, did. Both Mr. Headrick and Mr. Guffey were present when the police searched the house. Mr. Guffey attempted to flee, Mr. Headrick did not.

Mr. Headrick and Mr. Guffey had operated the lab for less than two months. Mr. Headrick originally became involved in methamphetamine-related activities when he paid other people, not parties to this case, to teach him how to make it for his own use. They absconded with his money and Mr. Headrick turned to Mr. Guffey for help. Mr. Headrick supplied the manufacturing location, some chemicals, and made a few sales. He was not directly involved in the drug's production.

During the search of the house the police also discovered several guns. Three were so-called "long guns," i.e., two old rifles—one a bolt-action from Mr. Headrick's childhood—and a shotgun. The police also discovered two loaded pistols. One was a .22 Jennings semi-automatic pistol in a dresser in Mr. Headrick's bedroom, which the district court described as a "Saturday Night Special." The second pistol, a Taurus 9mm semi-automatic with a laser sight, was hidden on a bookshelf, at least partially obstructed from view, in the basement with the methamphetamine lab.

Mr. Headrick testified at his sentencing hearing that he purchased the guns, or received them as gifts, before he began his criminal activities. He testified that he used the .22 Jennings for protection when he carried payroll for his business. He also testified that he purchased the 9mm Taurus in Arkansas a few months before his arrest and had unknowingly left it in his basement after he cleaned out his car.

---

* Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

Mr. Headrick testified that he did not know for sure that the guns were loaded. There is no evidence that Mr. Guffey or any other person involved in the manufacture or sale of the methamphetamine—including the buyers—knew where Mr. Headrick kept the weapons in the house.

## II.

In reviewing the district court's determination that the downward adjustments are not warranted we apply the clearly erroneous standard. *United States v. Snyder*, 913 F.2d 300, 305 (6th Cir.1990).

## III.

Mr. Headrick raises two issues we must review: first, the district court's denial of a downward adjustment for his role as a "minor participant" in the drug-making scheme; and second, its denial of his request to apply the "safety valve." Mr. Headrick's arguments regarding the relationship between the "safety valve" and an enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) are moot in light of *United States v. Bolka*, 355 F.3d 909 (6th Cir. 2004).

1. *Did the district court clearly err when it denied Mr. Headrick's motion for downward adjustment based on his role as "minor participant" in the criminal activity?*

■ "Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." *United States v. Rodriguez DeVaron*, 175 F.3d 930, 943–44 (11th Cir.1999). Mr. Headrick must meet this burden by a preponderance of the evidence. *United States v. Salgado*, 250 F.3d 438 (6th Cir.2001).

Here the district court did not clearly err in concluding that Mr. Headrick did not play a minor role. The district court found two things especially significant: first, that the methamphetamine production had been going on for at least six to eight weeks; and second, Mr. Headrick had actually sold the methamphetamine. This placed him outside the traditional "minor role" reductions given to people who serve as "mules" for larger drug conspiracies. In *United States v. Latouf* we stated:

The Defendant must prove the mitigating factors that justify a reduction by a preponderance of the evidence. An adjustment is not appropriate in the absence of a finding that the defendant was substantially less culpable than the average participant in the criminal enterprise. A defendant whose participation is indispensable to the carrying out of the plan is not entitled to a role reduction.

132 F.3d 320, 332 (6th Cir.1997) (citations and quotations omitted). Here Mr. Headrick was not "substantially less culpable" than the average participant and the United States correctly argues that his role was in fact "indispensable" given that he housed the methamphetamine lab. These factors, combined with the fact that he actually initiated the quest for methamphetamine production, albeit for his personal use, made a downward adjustment for minor participation inappropriate.

2. *Did the district court improperly deny Mr. Headrick's request for the application of the U.S.S.G. § 5C1.2(a) "safety valve" to the gun-related offenses?*

■ To qualify under the "safety valve" of § 5C1.2(a), Mr. Headrick must show by a preponderance of the evidence that he did not possess a firearm "in connection with" the charged offense. *Bolka*, 355 F.3d at 911–12. In this case the district court explicitly disclaimed interest in the

so-called "long guns," i.e., the old rifles and the shotgun. It focused its analysis instead on the two pistols—the .22 Jennings found in Mr. Headrick's dresser and the 9mm Taurus found in the basement. The district court noted:

> The specific language that we're dealing with here, found in 5C1 .2, provides that the defendant must have possessed a firearm or other dangerous weapon in connection with the offense of conviction, that is, the drug-trafficking offense here.
>
> The Court finds that the defendant possessed the firearms mentioned in the presentence report prior to his involvement in the methamphetamine operation here. The Court also finds that certain of the long guns were antique weapons and were unlikely to have any connection with the drug-trafficking offense. The Court further finds that the two short guns, the Taurus semiautomatic and the Jennings .22 caliber weapon, are typical of the guns that are used by drug traffickers. The Court also makes a finding that the location of these guns in the defendant's premises could have emboldened the defendant in the manner that the Sixth Circuit has discussed in many cases when it elaborated on the fortress theory. Therefore, the Court finds that the defendant's possession of these two guns were in connection with the drug-trafficking offense. The Court, accordingly, has found that the presentence report was correct in its not giving the defendant the benefit of the safety valve.

The district court made specific reference to the "fortress theory," which creates a nexus between the drugs and the guns. *See United States v. Hardin,* 248 F.3d 489, 500 (6th Cir.2001). We have previously noted that the fortress theory creates a sufficient connection "if it rea-sonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction." *United States v. Ennenga,* 263 F.3d 499, 503 (6th Cir.2001)(quotation marks omitted).

Here, Mr. Headrick testified that the guns bore no relation to the drug related activities on his property, but the district court concluded that they could have emboldened him and encouraged him to participate in the illegal activity. Although this conclusion may be debatable, it is plausible and therefore is not "clear error." *Anderson v. City of Bessemer City, N.C.* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

### IV.

For the reasons given above, we affirm.