File Name: 07a0440n.06
Filed: June 22, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 06-5807

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHN HENRY MOORE,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

_____/

Before:      MARTIN and BATCHELDER, Circuit Judges; O'MEARA, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge. Defendant James Henry Moore appeals the district

court's imposition of a four-level enhancement to his Sentencing Guidelines range for use of a

firearm in connection with another felony, pursuant to § 2K2.1(b)(5) of the United States Sentencing

Guidelines. For the reasons outlined below, we **AFFIRM** the decision of the district court.

I.

On October 17, 2005, a grand jury returned an indictment against Moore charging him with

the following: (1) possession of a short-barreled rifle, in violation of 26 U.S.C. §§ 5822, 5861(c) and

5871; (2) possession of an unregistered short-barreled rifle, in violation of 26 U.S.C. §§ 5841,

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District
of Michigan, sitting by designation.

5861(d) and 3871; (3) possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2); and (4) possession of an unregistered machine gun, in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. The firearms providing the basis for these charges were discovered during a search of Moore's residence conducted on September 10, 2004. On March 6, 2006, Moore pled guilty to all four counts.

Following entry of his guilty plea, the Probation Officer prepared a presentence report (PSR). The PSR provided that during the search, officers seized not less than twenty-eight assorted firearms, of which Moore claimed ownership. These firearms were found inside a large gun safe in the closet of the master bedroom. Twenty-five of these firearms, although not registered to Moore, were otherwise "legal." This smorgasbord of weaponry included shotguns, rifles, and pistols, such as a Glock 9mm pistol and a Hi-Point 995 Carbine semi-automatic rifle. Moore also possessed three illegal firearms that were classified as machine guns under 18 U.S.C. § 5845(b), meaning that they were either assembled and/or modified so that they were capable of firing automatically more than one shot by a single pull of the trigger. Officers also found a small green safe inside the closet containing 1.73 kilograms of marijuana.[1] In a metal box sitting just above the marijuana safe, officers found another firearm and a cylindrical device that was later identified as a metal barrel extension.[2] Numerous other firearms-related items, including ammunition, were also seized from

---

[1]This marijuana, along with other items seized during the search of Moore's home, formed the basis of charges brought against him in state court. These charges were dismissed after Moore pled guilty to the instant federal offenses.

[2]It is not clear whether this metal box was locked.

Moore's home. Moore stated at his sentencing hearing that he alone had access to the gun safe, and that he kept the key to the safe on his person.

The PSR contained the following guidelines calculation.[3] First, the four counts were grouped and treated as one, for which Moore received a base offense level of eighteen. Two levels were added because Moore possessed three to seven firearms. Pursuant to § 2K2.1(b)(5), another four levels were added based on a finding that these firearms were possessed in connection with another felony offense, to wit, possession of a controlled substance.[4] The PSR recommended a three-level reduction for acceptance of responsibility, resulting in a total offense level of twenty-one. Because Moore had no criminal history, he was placed into a criminal history category of I. Moore filed a motion in response to the PSR, which contained, inter alia, an objection to the four-level enhancement pursuant to § 2K2.1(b)(5).

A sentencing hearing was held on June 6, 2006. After the district judge relayed to the parties the guidelines calculation provided in the PSR, counsel for Moore argued his objection to the § 2K2.1(b)(5) enhancement. In order to assist the district court in making its determination, Brent Booth, one of the officers who executed the search warrant, testified at the sentencing hearing regarding the quantity of marijuana and firearms found at Moore's home. In addition, the

---

[3]Moore was sentenced under the 2005 edition of the United States Sentencing Guidelines.

[4]Section 2K2.1(b)(5) of the 2005 Sentencing Guidelines provides, in pertinent part: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." Application Note 4 explains that "'[f]elony offense,' as used in subsection (b)(5), means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained."

government produced a forensic report identifying the substance found at Moore's home as marijuana. Ultimately, the district court overruled Moore's objection to the four-point enhancement. After dealing with another objection not at issue in this appeal, the district judge considered the government's § 5K1.1 motion based upon Moore's substantial assistance in another case, and granted another three-level reduction in offense level. This resulted in a total offense level of eighteen, which when paired with Moore's criminal history category of I, yielded a guidelines range of twenty-seven to thirty-three months.[5] The district judge then conducted a thorough analysis of the factors set forth in 18 U.S.C. § 3553(a) and ultimately settled on twenty-seven months' imprisonment — the lowest sentence within the guidelines range. This sentence was to be followed by two years' supervised release.

## II.

The issue on appeal is whether the district court erred in imposing a four-level enhancement for use of a firearm in connection with another felony under § 2K2.1(b)(5) of the Sentencing Guidelines. As noted above, a district court may impose a four-point enhancement pursuant to § 2K2.1(b)(5) "if the defendant used or possessed any firearm or ammunition in connection with another felony offense."

"We review for clear error the district court's factual findings, and accord 'due deference' to the district court's determination that the USSG § 2K2.1(b)(5) enhancement applies." *United States v. Burke*, 345 F.3d 416, 426-27 (6th Cir. 2003). A court should apply this four-point

---

[5]Had Moore's objection to the four-point enhancement been sustained, he would have had a total offense level of 14, which would have given him a guidelines range of fifteen to twenty-one months.

enhancement only if the government can establish by a preponderance of the evidence that the defendant possessed or used the firearm in connection with another felony. *United States v. Hardin*, 248 F.3d 489, 496 (6th Cir. 2001).

In order to apply § 2K2.1(b)(5)'s four-point enhancement, the district court need not find that the defendant used the gun; rather, it is enough that he possessed the gun in connection with any felony. *Id*. at 498. Although the Sentencing Guidelines do not define the meaning of the phrase "in connection with," the approach this Court has adopted is to define the phrase as equivalent to the "in relation to" language of 18 U.S.C. § 924(c)(1). That section provides various mandatory minimum sentences for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." *Id.* at 497. As we have stated:

> The phrase "in relation to" . . . at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. . . . Instead, the gun at least must "facilitate, or have the potential of facilitating," the drug trafficking offense.

*Id*. at 497-98 (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)).

This Court has adopted the so-called "fortress theory" in the context of § 2K2.1(b)(5), which provides that firearms are used "during and in relation to" a drug offense where "it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction." *Hardin*, 248 F.3d 500; *see also United States v. Huffman*, 461 F.3d 777, 788 (6th Cir.

2006) ("This court has articulated the 'fortress theory' as a means of satisfying § 2K2.1(b)(5), which applies where a defendant has used a firearm to protect the drugs, facilitate a drug transaction, or embolden himself while participating in felonious conduct.").

We note that Moore did not specifically object to the PSR's allegation that 1.73 kilograms of marijuana were found in his home. Because Moore did not object to this allegation, the district court was permitted to accept it as true. *United States v. Levy*, 250 F.3d 1015, 1018 (6th Cir. 2001). Further, there is no dispute that Moore possessed these firearms, as he claimed ownership over them and entered guilty pleas related to his possession of four of the firearms. Thus, the sole question we must address is whether these firearms were possessed "in connection with" Moore's drug offense.

In explaining his reasons for applying the § 2K2.1(b)(5) enhancement, the district judge found that Moore's possession of 1.73 kilograms of marijuana constituted a "felony offense" for purposes § 2K2.1(b)(5). Specifically, the district judge found that Moore possessed this marijuana with intent to distribute it to others, noting that this quantity of marijuana is far more than the average user can smoke. The district judge ruled that there was enough evidence to establish that the firearms were possessed in connection with this drug offense. He explained:

> In this case, because the drugs were in close proximity, within, apparently, a few feet of these — of the controlled substances, the court cannot find that it was unlikely that these drugs were connected with the firearms. If someone had broken into the defendant's house, the court has to ask itself, would the defendant — could the defendant have gotten to that firearm quickly to use the firearm to protect his drug stash or perhaps protect his money or even his life from a disgruntled or an unhappy drug buyer. It seems clear that these firearms were in such close proximity that they could have been used for that.

Because we find that the government was able to establish by a preponderance of the evidence that these firearms were used in connection with Moore's drug offense, we believe that the district court did not err in applying this enhancement. First, as the district judge noted, the guns were found not just in the same room, but in the same closet, just a few feet away from the marijuana. *See Hardin*, 248 F.3d at 498-99 ("The fact that the firearm was found in the same room where the [drugs] w[ere] stored can lead to the justifiable conclusion that the gun was used in connection with the felony."); *id*. at 500 (holding that the fortress theory was applicable where it "reasonably appear[ed]" that the gun was used to protect the drugs, given that the drugs and firearm were found in the same location).

While we realize that the marijuana was in a separate safe from that which housed a majority of the guns, we cannot ignore the type and quantity of guns found. Moore did not merely possess a hunting rifle or two. *See Hardin*, 248 F.3d at 496 ("There could be a factual scenario . . . where the firearm is an unloaded hunting rifle located in a closet, and the enhancement might not apply."). Rather, Moore possessed *twenty-eight* firearms, including short-barreled rifles, several semi-automatic weapons, and three illegal machine guns. *See Huffman*, 461 F.3d at 788 (holding that a relevant factor to consider in determining the applicability of the fortress theory is whether the type of firearm found (in that case, an automatic assault rifle) is one that is commonly used by drug dealers); *United States v. Wyatt*, 102 F.3d 241, 243 (7th Cir. 1996) (explaining that the guns found—a short-barreled rife and a handgun—were the types of guns used in the drug-dealing business), *cited in Hardin*, 248 F.3d at 499; *see also United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001) (noting that the type of weapon is a relevant factor when determining whether it was

possessed in furtherance of a drug crime under § 924(c)). Further, not one of these firearms was registered to Moore, as required by 18 U.S.C. § 5841. *See Mackey*, 265 F.3d at 462 (noting that the legality of a gun is a relevant factor to consider in order to determine whether it was possessed in furtherance of a drug crime under § 924(c)).

In support of his claim, Moore argues that he merely *collected* these guns. This argument is on the one hand perfectly reasonable, as given the sheer quantity of firearms found at his home, we have little doubt that Moore was quite the gun enthusiast. But the mere fact that Moore accumulated this arsenal for one purpose—i.e., it was his hobby—does not foreclose our finding that he also possessed the guns for the purpose of facilitating his drug offense. *See Hardin*, 248 F.3d at 498 (holding that a firearm could be used both to protect the defendant's spouse *and* to facilitate the defendant's drug trafficking crimes). Further supporting this dual purpose is the fact that, as noted above, the types of guns Moore possessed were those that are commonly found in connection with drug crimes. *See United States v. Massey*, 462 F.3d 843, 846 (7th Cir. 2006) (affirming the district court's decision to not apply a § 2K2.1(b)(5) enhancement where, although the defendant possessed twenty-one guns, there was only one pistol; the rest were rifles and shotguns, which supported the defendant's contention that he was a sportsman and gun collector). We acknowledge that the fact that the firearms (or at least most of them, as far as we can tell) were locked in a separate cabinet makes this a weaker case for the government than others we have seen. However, based on the factors mentioned above—the quantity, types, and registration statuses of the guns, and their proximity to a large amount of marijuana—we affirm the judgment of the district court.

III.

In sum, we find that the government has shown by a preponderance of the evidence that Moore possessed these firearms in connection with the marijuana he possessed with intent to distribute. Based on the types and quantity of firearms found in Moore's possession, and proximity of these firearms to a sizeable amount of marijuana, it reasonably appears that these firearms were to be used to protect or otherwise facilitate a drug transaction, and therefore, the fortress theory is satisfied. *See Hardin*, 248 F.3d at 500. The decision of the district court to apply the four-point enhancement in § 2K1.1(b)(5) is **AFFIRMED**.