**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0227n.06

**No. 08-6407**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | ) | **Apr 13, 2010** |
| **UNITED STATES OF AMERICA**, | ) | LEONARD GREEN, Clerk |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| **HARRY RAY DAVIS, JR.**, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| *Defendant-Appellant.* | ) | |
| | ) | **O P I N I O N** |
| | ) | |
| | ) | |

**BEFORE:** MERRITT, COLE, and COOK, Circuit Judges.

**COLE, Circuit Judge.** The defendant-appellant, Harry Ray Davis, Jr., appeals his sentence under 18 U.S.C. § 922(g)(1) for being a felon in possession of firearms. He argues that the district court erred in applying United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(b)(6) ("If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels."). For the reasons below, we **AFFIRM** Davis's sentence.

**I. BACKGROUND**

On July 17, 2007, Kentucky State Police officers received information from a cooperating witness stating that he had the ability to purchase methadone from Davis. Wearing a recording device, the witness met Davis later that day and purchased seven methadone pills and three tablets of Oxycodone. On August 1, the witness purchased thirty more Oxycodone pills from Davis; on

August 16, thirty-one tablets of Hydrocodone and a shotgun; and on August 20, a second shotgun.

Davis was indicted on December 13, 2007, on two counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). On June 19, 2008, Davis was arraigned before a magistrate judge and entered a plea of not guilty, but was rearraigned before the district court on July 31 and pleaded guilty to both counts. On November 7, the district court sentenced Davis to thirty months of imprisonment on each count, to be served concurrently. The first eight months of the sentence were to run consecutively, and the last twenty-two months concurrently, with a sentence in a different criminal proceeding.

In calculating Davis's sentence, the district court adopted the Presentence Investigation Report's findings: that, pursuant to U.S.S.G. § 2K2.1(a)(6), the base offense level for violating 18 U.S.C. § 922(g)(1) was fourteen; that, pursuant to § 2K2.1(b)(6), a four-level increase applied because Davis possessed the firearm in connection with another felony offense (felony drug-trafficking); that, pursuant to § 3E1.1(a), Davis was entitled to a three-level decrease for accepting responsibility, yielding a total offense level of fifteen; that Davis's criminal history category was IV; and that, as a result, the advisory Guidelines range was thirty to thirty-seven months. The district court overruled Davis's objection to the applicability of the four-level enhancement under § 2K2.1(b)(6).

Davis now appeals this ruling. We have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

This court "reviews a district court's calculation of the advisory sentencing Guidelines as part of [its] obligation to determine whether the district court imposed a sentence that is procedurally reasonable." *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009). In doing so, it reviews the

district court's factual findings for clear error and its legal conclusions de novo. *Id.* Which standard should be employed to review a district court's determination that U.S.S.G. § 2K2.1(b)(6) applies to a particular set of facts is subject to debate. *Compare, e.g.*, *United States v. Rogers*, 594 F.3d 517, 521-22 (6th Cir. 2010) (reviewing application of enhancement for clear error) *with United States v. Bullock*, 526 F.3d 312, 315-316 (6th Cir. 2008) (reviewing de novo). Under either a de novo or clearly erroneous standard of review, however, the result in this case is the same.

U.S.S.G. § 2K2.1(b)(6) states that, "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense," the Guidelines offense level is increased by four. For this enhancement to apply, the government must establish, by a preponderance of the evidence, a nexus between the firearm and an independent felony, which need not be charged in the indictment. *See United States v. Hymon*, 333 F. App'x 40, 42 (6th Cir. 2009) (citing *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007)); *see also* U.S.S.G. § 2K2.1, cmt. n.14(C) (2008) ("'Another felony offense' . . . means any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."). As indicated by the Guidelines commentary, demonstrating this nexus is not a particularly onerous burden. According to Application Note 14(A) to § 2K2.1, the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A) (2008). More specifically, Application Note 14(B) states that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," because "the presence of the firearm has the potential of facilitating another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(B) (2008).

Departing slightly from Application Note 14(B), we have stopped short of finding close proximity dispositive, holding instead that "[proximity] is certainly indicative of a connection between the guns and the drugs." *Angel*, 576 F.3d at 321. Under the "fortress theory" we have adopted in interpreting § 2K2.1(b)(6), a sufficient connection is established where "a defendant has used a firearm to protect . . . drugs, *facilitate a drug transaction*, or embolden himself while participating in felonious conduct." *United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006). Moreover, we have held that "in connection with" under § 2K2.1 has the same meaning as "in relation to" under 18 U.S.C. § 924(c)(1), which sets out mandatory minimum sentences for "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm." *See United States v. Moore*, 239 F. App'x 137, 140 (6th Cir. 2007) (citing *United States v. Hardin*, 248 F.3d 489, 497 (6th Cir. 2001)). Under § 924(c)(1), for a firearm to be used "in relation to" a drug-trafficking crime, it must "facilitate, or have the potential of facilitating" the drug offense—the same gloss adopted by Application Note 14(A) for "in connection with" under § 2K2.1(b)(6). *See id.* (quoting *Hardin*, 248 F.3d at 497-98). In other words, where firearms facilitated, or had the potential to facilitate, a drug transaction, § 2K2.1(b)(6) is satisfied.

Davis's conduct falls under this broad interpretation of § 2K2.1(b)(6). Conceding that the illegal sale of prescription drugs was a felony, Davis nonetheless argues that the firearm sales were not made in connection with the drug sales because the drug sales began prior to his possession of the guns. On this view, the sale of drugs may have facilitated the sale of the shotguns, but not the other way around. While this argument might be more convincing if all the drug sales preceded the sale of the guns (and if the future sale of the guns played no part in greasing the wheels for the preceding drug sales), it is undermined by the contemporaneous sale of drugs and the first shotgun

- 4 -

on August 16. As the Fourth Circuit recently held, the sale of a firearm in conjunction with drugs may "sweeten the pot," and thus has the potential to facilitate a drug deal. *See United States v. Bullard*, 301 F. App'x 224, 227 (4th Cir. 2008); *see also United States v. McGill*, 139 F. App'x 201, 202 (11th Cir. 2005) (reasoning that the simultaneous sale of firearms and crack satisfied § 2K2.1 because "[t]he firearms may have . . . facilitated the crack sales by allowing [the defendant] to become a one-stop-shop for crack and firearms"). Even Davis seems unwilling to rule out entirely the possibility that the firearm sale facilitated the drug sale, arguing only that the latter "would probably have continued to occur" without the former. While he is correct that the simultaneous but coincidental possession of firearms and drugs is not sufficient to satisfy § 2K2.1(b)(6), *see Angel*, 576 F.3d at 321 ("[P]ossession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of § 2K2.1."), the sale of a firearm together with prescription drugs goes beyond coincidental simultaneous possession. The joint sale suggests that the shotgun facilitated, or at least had the potential to facilitate, the drug deal.

At oral argument, counsel argued that Davis's conduct nevertheless did not satisfy § 2K2.1(b)(6) because Davis's possession of firearms did not increase the danger inherent in the drug transaction. We have held that § 2K2.1(b)(6) was "designed to increase the recommended punishment for those particular defendants whose unlawful firearm possession has created a heightened risk of violence." *Bullock*, 526 F.3d at 316-17; *accord United States v. Burke*, 345 F.3d 416, 427 (6th Cir. 2003). It is not immediately evident how Davis's sale of apparently unloaded firearms together with drugs increased the risk of violence inherent in the drug deal, and it does not appear that this court has decided a case involving similar facts.

Nonetheless, the precedent of this and other circuit courts, together with the Guidelines

commentary, suggests that § 2K2.1(b)(6) is broad enough to cover the sale of firearms as part of a drug deal, even if there is no increased risk of violence. As discussed above, this court has stated that § 2K2.1(b)(6) is satisfied if the possession of firearms facilitates, or has the potential of facilitating, illegal conduct, without qualifying that the facilitation must increase the risk of violence. In addition, other circuit courts have held, without pointing to any increased risk of violence, that a sale of firearms made together with a drug deal can satisfy § 2K2.1(b)(6). *See Bullard*, 301 F. App'x at 227; *McGill*, 139 F. App'x at 202. Finally, it is noteworthy that Application Note 14(A) adopted the facilitation / potential to facilitate language from *Smith v. United States*, 508 U.S. 223 (1993). *See* U.S.S.G. Supp. App. C, amdt. 691 (2008). In *Smith*, the Supreme Court held that trading a gun for drugs satisfied the "in relation to" language of 18 U.S.C. § 924(c). *See* 508 U.S. at 238-39. Insofar as the "in connection with" language of § 2K2.1(b)(6) was intended to follow the Supreme Court's reading of "in relation to" under 18 U.S.C. § 924(c), *Smith* also supports our finding that the inclusion of a firearm as part of a drug deal satisfies § 2K2.1(b)(6).

### III. CONCLUSION

In sum, Davis's possession of firearms was "in connection with" a felony offense, pursuant to § 2K2.1(b)(6). Accordingly, we **AFFIRM** Davis's sentence.