[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 1, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16318
Non-Argument Calendar

_____

D.C. Docket No. 04-00114-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LAMAR JABBAR MCGILL,
a.k.a. Tony Green,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(July 1, 2005)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Lamar Jabbar McGill appeals his 108-month sentence for possession of a

firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  On appeal,

McGill argues that the district court: (1) erred by applying a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5); and (2) violated Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), by improperly enhancing his sentence based on facts that were not admitted by him in his plea agreement. After de novo review, we vacate McGill's sentence and remand for resentencing.

## I. BACKGROUND

### A. Plea Colloquy

Pursuant to a written plea agreement, McGill pled guilty to one count of possession of a firearm by a convicted felon. During the plea colloquy, the government proffered the following facts, which McGill admitted as true. In September 2003, Alcohol, Tobacco, Firearms, and Explosives Task Force ("ATF") agents received information that defendant McGill was a convicted felon and in possession of firearms, as well as quantities of cocaine that he was willing to sell. ATF agents confirmed that McGill had been convicted of aggravated assault in 2001.

Between October 2003 and December 2003, undercover ATF agents met with McGill to purchase firearms and cocaine. Specifically, on October 24, 2003, undercover ATF agents met with McGill and purchased three firearms: (1) a .38

caliber revolver; (2) a .25 caliber semi-automatic pistol; and (3) a .22 caliber semi-automatic pistol. All three firearms had traveled in interstate commerce.

**B.     PSI and Sentencing**

According to the PSI, between October and December 2003, McGill sold approximately 42.3 grams of crack cocaine, 10 firearms, and 1 hand grenade to undercover ATF agents. One of the firearms had a partially obliterated serial number. The sales occurred during a series of transactions initiated by McGill, in which he sold the undercover agents either crack, weapons, or both.

The PSI set McGill's base offense level at 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A). The PSI also recommended the following enhancements: (1) a four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(1)(B), because the offense involved between 8 and 24 firearms; (2) a two-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(3), because the offense involved a hand grenade; (3) a two-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(4), because the offense involved at least 1 firearm with a partially obliterated serial number; and (4) a four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(5), because McGill used or possessed the firearms in connection with another felony offense, namely, distribution of crack.

3

With a total offense level of 32 and a criminal history category of III, McGill's Guidelines range was 151-188 months' imprisonment. Because the statutory maximum sentence for a violation of § 922(g)(1) is 10 years, McGill's recommended imprisonment term was reduced to 120 months' imprisonment.

McGill objected to the PSI, arguing that it was constitutionally impermissible under Blakely for the district court to enhance McGill's sentence based on facts not admitted by him in the plea agreement. Further, McGill objected to the four-level enhancement under § 2K2.1(b)(5), arguing that the firearms were not possessed "in connection with" another felony offense.

Pursuant to § 5K1.1, the government filed a motion for a downward departure based on McGill's substantial assistance in the investigation and prosecution of a codefendant. At the sentencing hearing, the district court adopted the factual statements contained in the PSI, noting that McGill had failed to object to them. Additionally, the district court overruled McGill's objections as to the enhancements. The district court concluded that with regard to the § 2K2.1(b)(5) enhancement, the "in connection with" requirement was satisfied. Specifically, the district court stated:

> What do you say . . . to the fact that all of the information in this case shows that the firearms and the drugs were offered and/or sold all at the same time? That he sold firearms and he also sold crack cocaine during

4

the same instance, and that they were all offered to the officers and sold at the same time? And, you know, the Sentencing Guidelines, 2K2.1(b)(5), all that's required is if the evidence shows that the drugs and firearms were intermingled in his conduct, and that they were in connection with. And if they're intermingled and in connection with, then they satisfy that provision of the guidelines.

Finally, the district court adopted the PSI's sentencing calculations, finding that the applicable Guidelines imprisonment term was 120 months. Based upon the government's § 5K1.1 motion, the district court departed downward and sentenced McGill to 108 months' imprisonment.

## II. DISCUSSION

### A. Section 2K2.1(b)(5) Enhancement

On appeal, McGill argues that the district court erred by enhancing his sentence under § 2K2.1(b)(5) because the firearms involved in the offense were not used or possessed "in connection with" the sale of crack, but rather, served only as merchandise in unrelated transactions.[1]

Section 2K2.1(b)(5) provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with

---

[1]We review the district court's application and interpretation of the Sentencing Guidelines de novo. United States v. Rhind, 289 F.3d 690, 693 (11th Cir. 2002), cert. denied, 537 U.S. 1114, 123 S. Ct. 869 (2003).

another felony offense." U.S.S.G. § 2K2.1(b)(5) (emphasis added).[2] "While §

2K2.1(b)(5) does not define the phrase 'in connection with,' we have held that

courts should give such phrases their ordinary meaning." United States v. Rhind,

289 F.3d 690, 695 (11th Cir. 2002), cert. denied, 539 U.S. 1114, 123 S. Ct. 869

(2003) (citation omitted). We have also held that the phrase "in connection with"

should be given an expansive interpretation. See id.; see also United States v.

Matos-Rodriguez, 188 F.3d 1300, 1308-09 (11th Cir. 1999) (interpreting the "in

connection with" language contained in U.S.S.G. § 2B5.1(b)(3)); United States v.

Young, 115 F.3d 834, 838 (11th Cir. 1997) (interpreting the "in connection with"

language contained in U.S.S.G. § 4B1.4(b)(3)(A)).

Further, we have concluded that the "in connection with" language "does

not exclude possession of the firearm as the fruit of the crime which the possessor

is contemporaneously committing." Young, 115 F.3d at 837. In Young, the

defendant robbed a house and stole the occupant's rifle. Id. at 835. The district

---

[2]Specifically, § 2K2.1(b)(5) states:
If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.
U.S.S.G. § 2K2.1(b)(5).

court determined that the firearm was possessed "in connection with" the burglary, and we affirmed. Id. at 836-38.[3]

In this case, the district court did not err in concluding that McGill possessed the firearms "in connection with" the sale of drugs. According to the facts in the PSI, which McGill did not challenge, McGill sold both firearms and crack simultaneously to undercover ATF agents. Although the firearms were not the "fruit" of McGill's crack sales, the evidence is adequate to support a finding that the firearms were part and parcel of those sales. The firearms may have even facilitated the crack sales by allowing McGill to become a one-stop-shop for crack and firearms. Accordingly, the district court did not err by applying the four-level enhancement under § 2K2.1(b)(5).

## B. Booker Error

On appeal, McGill argues that, under Blakely and Booker, the district court erred by applying the § 2K2.1(b)(5) enhancement based on facts that were not charged in the indictment and that he did not admit.

---

[3]In Young, this Court was not considering the "in connection with" language found in § 2K2.1(b)(5), but was analyzing the "in connection with" language found in U.S.S.G. § 4B1.4(b)(3)(A), the career criminal provision. However, this Court has many times considered the definition of "in connection with" in other sections of the Guidelines, including § 4B1.4(b)(3)(A), when analyzing the "in connection with" language in § 2K2.1(b)(5). See, e.g., Rhind, 289 F.3d at 695.

In Booker, the Supreme Court held that Blakely applied to the Sentencing

Guidelines. United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir. 2005),

cert. petition filed, 73 U.S.L.W. 353 (Feb. 23, 2005) (No. 04-1148). Under

Booker, "there are two types of sentencing errors: one is constitutional and the

other is statutory." United States v. Dacus, 408 F.3d 686, 688 (11th Cir. 2005).

"[T]he Sixth Amendment right to trial by jury is violated where under a mandatory

guidelines system a sentence is increased because of an enhancement based on

facts found by the judge that were neither admitted by the defendant nor found by

the jury." Rodriguez, 398 F.3d at 1298. The statutory error occurs when the

district court sentences a defendant "under a mandatory Guidelines scheme, even

in the absence of a Sixth Amendment enhancement violation." United States v.

Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

Based on Booker, we conclude that the district court violated McGill's

Sixth Amendment rights by enhancing his sentence based on a judicial fact finding

that McGill possessed the firearms in connection with the sale of crack. Although

McGill never challenged that he sold the firearms and the crack together, he did

argue that the "in connection with" requirement was not satisfied. A district

court's determination that a firearm was used "in connection with" another felony

offense is a factual one. See United States v. Whitfield, 50 F.3d 947, 949 & n.8

8

(11th Cir. 1995) ("Whatever the applicable legal benchmark, the district court's <u>factual</u> determination that the weapon was used or possessed 'in connection with' the burglaries was not clearly erroneous."); <u>see also</u> <u>United States v. Jackson</u>, 276 F.3d 1231, 1235 (11th Cir. 2001) ("It is a reasonable finding of fact to conclude from this testimony that the defendant made a real and determined effort to use the gun in connection with the assault in some manner.").

McGill properly preserved his <u>Booker</u> claim in the district court by objecting to the PSI based on <u>Blakely</u> and by renewing that objection at sentencing. <u>See</u> <u>United States v. Dowling</u>, 403 F.3d 1242, 1245 (11th Cir. 2005). When there is a timely objection in the district court, we review the defendant's <u>Booker</u> claim <u>de novo</u> and determine whether the error is harmless. <u>See</u> <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005).

As discussed above, there was sufficient evidence to support the district court's application of the § 2K2.1(b)(5) firearm enhancement. Further, we note that the district court correctly calculated McGill's Guidelines range and properly applied the statutory maximum sentence of 120 months' imprisonment. <u>See</u> <u>United States v. Crawford</u>, 407 F.3d 1174, 1178 (11th Cir. 2005) (stating that after <u>Booker</u>, district courts must consult the Guidelines and "[t]his consultation

9

requirement, at a minimum, obliges the district court to calculate <u>correctly</u> the sentencing range prescribed by the Guidelines").

However, in this case, the government has failed to meet its burden to show that the constitutional error was harmless. <u>See Paz</u>, 405 F.3d at 948.[4] In <u>Paz</u>, which was a <u>Booker</u> constitutional error case, we explained that harmless error analysis puts the burden on the government to show "beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." <u>Id.</u> (quotation marks, punctuation, and citation omitted). Thus, the government must show beyond a reasonable doubt that the mandatory, as opposed to the advisory, application of the Guidelines did not contribute to the defendant's sentence. <u>See</u> <u>United States v. Davis</u>, 407 F.3d 1269, 1270-71 (11th Cir. 2005).

In this case, there is no evidence indicating what effect, if any, changing from a mandatory to an advisory approach would have had on the district court's sentencing decision. The district court gave no indication of what sentence it would have imposed under an advisory Guidelines scheme. Accordingly, "[w]e simply do not know what the sentencing court would have done had it understood

---

[4]"To find harmless error, we must determine that the error did not affect the substantial rights of the parties." <u>Paz</u>, 405 F.3d at 948 (quoting <u>United States v. Hernandez</u>, 160 F.3d 661, 670 (11th Cir. 1998)). "A constitutional error, such as a <u>Booker</u> error, must be disregarded as not affecting substantial rights if the error is harmless beyond a reasonable doubt." <u>Id.</u> (internal quotation marks, punctuation and citation omitted).

the guidelines to be advisory rather than mandatory, and had properly considered the factors in 18 U.S.C. § 3553(a)." Davis, 407 F.3d at 1271.  Thus, the government has failed to carry its burden.

Therefore, we vacate McGill's sentence and remand to the district court for resentencing.  On remand, the district court is required to sentence McGill under an advisory Guidelines regime.  Booker, 125 S. Ct. at 757.[5]

**VACATED AND REMANDED.**

---

[5]We do not mean to imply that on remand the district court must impose a lesser sentence. Rather, we merely hold that the government has failed to meet its burden to show that the Booker statutory error of sentencing under a mandatory Guidelines regime was harmless.

We also will not attempt to decide now whether a particular sentence below or above the Guidelines range might be reasonable in this case.  If there is an appeal of the actual post-remand sentence which raises that issue, we can decide it then.