**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0158n.06**

**No. 13-5047**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Feb 27, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DOYLE STANFORD FRITTS, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

**Before: COLE and GRIFFIN, Circuit Judges; PEARSON, District Judge.**[*]

**BENITA Y. PEARSON, District Judge.** Doyle Stanford Fritts ("Fritts") appeals his convictions and sentence on charges of conspiracy to distribute oxycodone, distribution of oxycodone, and possession of a firearm by a convicted felon. For the following reasons, we affirm Fritts's convictions and sentence.

**I. BACKGROUND**

An investigation by federal law enforcement authorities into drug activity in Whitley County, Kentucky, resulted in the arrest of Fritts and other individuals. After a trial, Fritts was convicted by a jury on counts of conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846 (Count 1); distribution of oxycodone, in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 3); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 4).

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

After the jury's verdict, Fritts filed a motion for a new trial and a motion for judgment of acquittal with respect to the felon-in-possession charge. The district court denied both motions. Addressing the motion for a new trial, the district court determined that Fritts's claim of juror misconduct, namely, that jurors had slept through portions of the trial, lacked merit. In denying the motion for judgment of acquittal, the district court concluded that the evidence at trial was sufficient to establish that Fritts, a convicted felon, possessed a firearm in violation of the statute.

At sentencing, the district court adopted the findings of the presentence report and overruled Fritts's objections. The district court varied above the recommended sentencing guideline of 140-175 months and imposed a sentence of 180 months.[1] Thereafter, the district court entered a final judgment of convictions and sentence.

Fritts timely appealed. He asserts five grounds for vacating the district court's judgment. First, Fritts argues that the district court abused its discretion when it denied his motion for a new trial without first holding an evidentiary hearing. Second, Fritts contends that insufficient evidence was presented at trial to support his conviction for being a felon-in-possession. Third, Fritts claims that the district court erred in determining his sentence because it improperly found that he had distributed 600 oxycodone pills. Fourth, Fritts maintains that the district court erred when it concluded that he possessed a firearm during a drug offense, and, on that basis, improperly applied a two-level enhancement for his drug offenses under the United States Sentencing Guidelines ("Sentencing Guidelines"). Fifth, Fritts argues that the district court erred when it found that Fritts

---

[1]The district judge imposed a sentence of 180 months for Counts 1, 2, and 3, and a sentence of 120 months for Count 4. The sentences were ordered to be served concurrently.

2

possessed a firearm in connection with another felony, and, as a result, improperly applied a four-level enhancement for his felon-in-possession offense.

We have jurisdiction over Fritts's appeal under 28 U.S.C. § 1291.

## II.  DISCUSSION

### A.  Denial of Motion for New Trial

The district court's denial of a motion for a new trial is reviewed under an abuse of discretion standard.  *United States v. Holder*, 657 F.3d 322, 328 (6th Cir. 2011).  Similarly, a district court's decision not to grant an evidentiary hearing before ruling on a motion for a new trial is reviewed for abuse of discretion.  *United States v. Allen*, 254 Fed. App'x 475, 477 (6th Cir. 2007) (citing *United States v. Bass*, 460 F.3d 830, 838 (6th Cir. 2006)).  A district court abuses its discretion "'when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact.'" *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005) (quoting *Schenck v. City of Hudson,* 114 F.3d 590, 593 (6th Cir. 1997)).  Under this standard, the lower court's decision will be reversed only if the reviewing court is "firmly convinced that a mistake has been made." *Id*.

Fritts's post-verdict motion for a new trial was supported by an affidavit from his mother, Betty Fritts, who attested that she observed jurors sleeping during various portions of the trial.  On the basis of his mother's affidavit, Fritts claims that he was denied his due process right to have a jury hear and evaluate the evidence against him.  While acknowledging that the burden falls on him to demonstrate that a new trial should be granted, Fritts contends that he was "summarily stripped of his ability to meet his burden" because the district court did not hold an evidentiary hearing

3

before deciding the motion. The Government responds that the district court did not abuse its discretion because Fritts failed to offer credible evidence of juror misconduct or that he was denied a fair trial.

Rule 33(a) of the Federal Rules of Criminal Procedure provides in relevant part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Motions for a new trial are not favored and are granted only with great caution." *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976). A defendant in a criminal case "bears the burden of proving that a new trial should be granted." *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994); *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

The Sixth Circuit has recognized that "[w]hen possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the [S]ixth [A]mendment." *United States v. Lloyd*, 462 F.3d 510, 518 (6th Cir. 2006) (quotations omitted). The district court's refusal to hold an evidentiary hearing, however, is not an abuse of discretion when there is no credible allegation of juror misconduct. *Id*. Indeed, the district court's "decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion" because "the trial judge is in the best position to determine the nature and extent of alleged jury misconduct . . . ." *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985). Consequently, the trial judge is entrusted with broad judicial discretion "to determine what steps, *if any*, are required to make certain that a jury has not been tainted." *United States v. Rigsby*, 45 F.3d 120, 124 (6th Cir. 1995) (emphasis added); *see United States v. Willis*, 277 F.3d 1026, 1034 (8th Cir. 2002) (trial court did not abuse discretion by not holding evidentiary hearing when

4

confronted with claim of juror bias); *see also United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir. 1992) (evidentiary hearing not warranted "when only 'thin allegations of jury misconduct' are present") (citation omitted).

In denying Fritts's motion for a new trial, the district judge relied on his own observations and reasoned that he did not notice incidents of jurors sleeping during trial. Furthermore, he noted that no courtroom personnel noticed jurors sleeping, no jurors raised the issue, and no attorneys, including Fritts's own counsel, complained about jurors sleeping. Indeed, Fritts's attorney admitted that he had not observed jurors sleeping. The claimed misconduct, observed by no one except Fritts's mother, and brought to the court's attention only after the verdict was rendered did not compel the district judge to hold an evidentiary hearing under the circumstances.

District judges cannot be expected to conduct an evidentiary hearing each time a claim of juror misconduct is raised. To so require would be to wrest discretion from the appropriate judicial authority and to needlessly tax the finite resources of the district courts. We conclude that the district court did not abuse its discretion in ruling on the motion for a new trial without conducting an evidentiary hearing.[2]

---

[2]The Government argues, in the alternative, that Fritts's general allegations of juror misconduct were insufficient to show that he was denied a fair trial. The district court found that even had jurors slept during the trial, Fritts failed to show a "sufficient injurious effect" because the affidavit of his mother only lodged "general accusations" that jurors slept during Fritts's testimony and defense counsel's questioning of witnesses. What effect such conduct had on the trial may be a question that is properly addressed in an evidentiary hearing. Nevertheless, for the reasons stated, the district court did not abuse its discretion in ruling on the motion for a new trial without conducting an evidentiary hearing.

### B. Denial of Motion for Judgment of Acquittal

Rule 29(a) of the Federal Rules of Criminal Procedure provides in relevant part that the district court, on the defendant's motion, "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." We review a denial of a motion for judgment of acquittal *de novo*. *United States v. Ramirez*, 635 F.3d 249, 255 (6th Cir. 2011); *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003); *United States v. Harrod*, 168 F.3d 887, 889 (6th Cir. 1999). The district court's decision will be affirmed "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Ramirez*, 635 F.3d at 255 (internal quotations omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (when reviewing sufficiency of evidence to sustain conviction on direct appeal, controlling inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)). This is a "very heavy burden" for the convicted defendant to meet. *United States v. Sease*, 659 F.3d 519, 523 (6th Cir. 2011) (quoting *United States v. Jones*, 641 F.3d 706, 710 (6th Cir. 2011)). When the reviewing panel assesses the sufficiency of the evidence used to convict a defendant, it "do[es] not weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). Rather, the reviewing court "'draw[s] all available inferences and resolve[s] all issues of credibility in favor of the jury's verdict.'" *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)).

For the jury to have properly convicted Fritts of being a felon in possession of a firearm,[3] the jury must have concluded, beyond a reasonable doubt, that (1) Fritts had a previous felony conviction; (2) Fritts possessed the firearm specified in the relevant indictment; and (3) the firearm traveled in or affected interstate commerce. *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010). Here, Fritts challenges the sufficiency of the evidence only with respect to the element that he possessed the shotgun specified in the Superseding Indictment. The element of possession may be proven with evidence of actual or constructive possession. *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006). Constructive possession "'exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id.* (quoting *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005)).

The Government presented evidence at trial showing that Fritts brokered the sale of, and handled, the shotgun in question. ATF Special Agent Todd Tremaine testified that Fritts's brother, Charles Fritts ("Charles"), came into possession of the shotgun, and was looking for a way to sell it. Fritts testified that he put Charles in touch with an individual named Larry West. West testified that, in February, 2011, Charles called and offered to sell him the shotgun for $150. The next day, while West was standing outside a car lot, Fritts drove by and informed West that "if you want to

---

[3]"It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

buy that gun, Charles has still got it." The following day, West drove to Charles's residence on Ted Ball Road, and was met outside by Fritts. Fritts informed West that Charles was not home. Fritts then stated that the shotgun was at his mother's trailer, where he lived.[4] That trailer neighbored the trailer where Charles resided. West testified that when he and Fritts entered the trailer, Fritts went into a bedroom, came back with the shotgun, and handed it to West. West inspected the shotgun, gave Fritts $150, and went home with the weapon.

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could conclude, beyond a reasonable doubt, that Fritts constructively and actually possessed the firearm in question. Fritts arranged the sale of the weapon from Charles to West. The shotgun was kept in the trailer where Fritts lived and exercised dominion over the weapon. Finally, Fritts invited West inside the trailer, retrieved the shotgun from a bedroom, and gave it to West in exchange for money.

Fritts contends that (1) West's testimony "was in direct conflict" with the statement that Charles gave to Agent Tremaine, and with Fritts's own testimony at trial; (2) West testified that he felt "brow-beaten" into agreeing that he had actually purchased the gun from Fritts; (3) West agreed

---

[4]Although Fritts claims in his appellate brief that the shotgun was stored in Charles's trailer, a careful review of the record reveals otherwise. West testified that when he arrived to view the shotgun, Fritts told him that "it's up at mom's." West then testified that "we walked up there." Indeed, though Fritts denied handing the gun to West (he claimed Charles did it), Fritts admitted that the gun was stored in the bedroom of his mother's trailer. Furthermore, Charles admitted in his plea agreement that in December, 2010, he moved the shotgun from his residence to Fritts's residence in response to police activity in the area.

8

with Fritts during a phone conversation that Fritts "had nothing to do with the gun"; (4) Fritts was unable to accurately recall the details of the transaction; and (5) West had "mental issues."

These arguments lack merit. Fritts's attacks on West's testimony "'are simple challenges to the quality to the government's evidence and not the sufficiency of the evidence.'" *Paige*, 470 F.3d at 608 (quoting *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991)). "[D]etermining the credibility of witnesses is a task for the jury, not this court." *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004). The jury was entitled to believe West's testimony over Fritts's self-interested version of events and that of his brother. Moreover, West did not testify that his testimony was coerced by Agent Tremaine. To the contrary, while West insisted during the ATF investigation that he "made the deal with Charles," he told Agent Tremaine that he received the shotgun from Fritts. Finally, notwithstanding the reference to West's mental health, regarding which Fritts provides no elaboration or analysis, nothing in the record or briefs indicates that West was not competent to testify at trial.

Accordingly, the district court properly denied Fritts's motion for judgment of acquittal.

**C. Sentencing**

We review a criminal sentence for reasonableness under an abuse of discretion standard. *United States v. Thompson*, 586 F.3d 1035, 1037 (6th Cir. 2009). A district court abuses its discretion if it imposes a sentence that is "either procedurally or substantively unreasonable." *United States v. Rosenbaum*, 585 F.3d 259, 266 (6th Cir. 2009). A sentencing court commits procedural error by, among other things, selecting a sentence based on clearly erroneous facts or by improperly calculating the Sentencing Guidelines range. *Id.* Fritts's challenges to the district

court's sentence are based on several claimed procedural errors. This Court "reviews the district

court's factual findings in calculating the [Sentencing] Guidelines range for clear error, but its legal

conclusions are reviewed *de novo*." *Thompson*, 586 F.3d at 1038.

### 1. District Court's Finding that Fritts Distributed 600 Oxycodone Pills

The district court adopted the finding of the presentence report that Fritts sold 600

oxycodone pills over a twenty-two month period from May, 2009, to March, 2011.[5] As he did at

the sentencing hearing, Fritts argues that the eyewitness testimony on which the finding is based is

unreliable. He urges us to vacate the sentence on the basis of clear error. The Government

contends, to the contrary, that "the evidence shows that Fritts was responsible for distributing far

more than 600 pills."

"At sentencing, the prosecution bears the burden of proving by a preponderance of the

evidence the quantity of drugs involved in an offense." *United States v. Russell*, 595 F.3d 633, 646

(6th Cir. 2010). Where there is no drug seizure or the amount seized does not reflect the scale of

the offense, "'the court shall approximate the quantity of the controlled substance. In making this

determination, the court may consider, for example . . . similar transactions in controlled substances

by the defendant . . . .'" *Id.* (quoting U.S.S.G. § 2D1.1 app. note 12 (2007)). The evidence

supporting the district court's estimate "must have a minimal level of reliability beyond mere

allegation, and the court should err on the side of caution in making its estimate." *Id.* (quoting

---

[5]Based on this finding of drug quantity, which translates to a marijuana equivalence of 90.45 kilograms, the district court arrived at a base offense level of twenty-four for Fritts's drug offenses, Counts 1 through 3. *See* U.S.S.G. § 2D1.1 app. note 8(D) (drug equivalency table); *see also* U.S.S.G. § 2D1.1(c)(8) (drug quantity table).

*United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004). "[A] district court's approximation of drug quantity is not clearly erroneous if it is supported by competent evidence in the record." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008).

The district court's determination with respect to drug quantity was based primarily on the testimony of Fritts's supplier, Scott Douglas. Douglas testified that he sold oxycodone pills to Fritts on a "daily basis" from approximately February, 2009, until Fritts was arrested in connection with this case in March, 2011. Douglas testified that each drug sale involved "[s]ometimes one, two, sometimes ten, 20, 30" pills. At another point, Douglas testified that he sold oxycodone to Fritts for a three-year period. Neither description is completely accurate because Fritts was incarcerated from December, 2006, until April, 2009.

According to Fritts, Douglas's testimony is so unreliable that the district court should not have relied on it. Fritts underscores the impossibility of the time period in which Douglas claimed that the drug sales occurred.

Although Douglas did not provide precise testimony regarding the duration of his drug sales to Fritts, the district court's finding was not clearly erroneous. Douglas admitted that his testimony was based on his "estimation." He testified, however, that the duration was "extensive. The presentence report, in estimating the quantity of drugs supplied to Fritts by Douglas, applied Douglas's testimony regarding his drug sales to the twenty-two month window between May, 2009, and March, 2011, in which Fritts was not incarcerated. In light of Douglas's testimony that the number of pills he sold to Fritts varied from one to thirty per transaction, and that the transactions occurred on a daily basis, the district court's finding that Douglas supplied Fritts with 600 pills is

11

a conservative one. Indeed, Fritts's counsel conceded during the sentencing hearing that the 600 figure is not on the high end. Furthermore, additional trial evidence showed that Fritts was heavily involved in the drug trade: (1) Fritts was convicted of conspiring to distribute oxycodone; (2) Fritts admitted using two other suppliers; (3) it was undisputed that, during an eight-day period in 2011, Fritts sold 18 pills to individuals cooperating with law enforcement authorities; (4) Jerry Bunch, Fritts's former employer, observed Fritts selling oxycodone at work on more than one occasion; and (5) three witnesses testified at trial that they made multiple purchases of oxycodone from Fritts.

Because the district court's finding that Fritts distributed 600 oxycodone pills met a minimum level of reliability and erred on the side of caution, we conclude that it was not clearly erroneous.

### 2. Two-level Enhancement for Fritts's Drug Offenses

The district court applied a two-level enhancement for Fritts's drug offenses because it determined that he possessed a firearm during a drug offense. Fritts objected to the enhancement on the ground that his gun possession was not related to a drug transaction and did not take place during any drug activity. On appeal, Fritts argues that the district court erred because no evidence established that the firearm was "present during any drug trafficking."

The Sentencing Guidelines provide: "If a dangerous weapon (including a firearm) was possessed, increase [the base offense level] by 2 levels." U.S.S.G. § 2D1.1(b)(1). Application note 11 to § 2D1.1 provides in relevant part: "The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The

enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

To apply the § 2D1.1(b)(1) enhancement, the government possesses the initial burden of showing by a preponderance of the evidence that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense, or during "relevant conduct." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012), *cert. denied*, __ U.S. __, 133 S. Ct. 375, 184 L. Ed. 2d 222 (2012); *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). "Relevant conduct" includes "'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Faison*, 339 F.3d at 520 (quoting U.S.S.G. § 1B1.3(a)(2)). Once the government meets its burden, a rebuttable presumption arises that the weapon was connected to the offense. *Greeno*, 679 F.3d at 514. The burden then shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to the offense. *Id.*

The Sixth Circuit considers the following factors, none of which is alone controlling, when determining whether the application of a § 2D1.1(b)(1) enhancement was appropriate: (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession. *Greeno*, 679 F.3d at 515.

13

Fritts conceded during the sentencing hearing that he possessed a firearm—the shotgun that he gave to West—during the period of the drug conspiracy for which he was convicted. Prior to handing the shotgun to West in February, 2011, Fritts stored the weapon in his mother's trailer, where he lived. In his plea agreement, Charles admitted that in December, 2010, he "walked the shotgun over" to Fritts's residence in response to police activity in that area. It is undisputed that on February 25, 2011, Fritts sold oxycodone to Jason Davis, a law enforcement cooperator, from his residence on Ted Ball Road. Two other witnesses, Aaron Nelson and John Kanter, testified that they engaged in drug transactions with Fritts at that location around February, 2011. Whether by actual possession (Fritts's handling of the shotgun) or by constructive possession (Fritts's storage of the shotgun where he lived and sold drugs), there was sufficient evidence to show that Fritts possessed the weapon during the relevant conduct of the drug conspiracy, thereby implicating the presumption that the shotgun was connected to the conspiracy. Notably, Fritts conceded during the sentencing hearing that the presumption applied.

Although the burden shifted to Fritts to show that the shotgun's connection to the drug conspiracy was "clearly improbable," he failed to offer evidence meeting his burden and defeating the presumption. *See Greeno*, 679 F.3d at 514 ("[a] defendant must present evidence, not mere argument, in order to meet his or her burden"). Furthermore, the relevant factors followed by the Sixth Circuit bode in favor of upholding the enhancement, *e.g.*, the firearm involved was a shotgun capable of heavy destruction; Fritts had ready access to the shotgun; the weapon was secreted in a residence where drug transactions occurred; and Fritts was undeniably a drug trafficker. In the final analysis, Fritts's actions fit squarely within the expectation of the Sentencing Guidelines that the

14

sentencing calculation should be enhanced because his conduct "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1, app. note 11.

We conclude that the district court's application of the two-level enhancement was not an abuse of discretion.[6]

### 3. Four-level Enhancement for Fritts's Felon-in-Possession Offense

The district court applied a four-level enhancement for Fritts's felon-in-possession offense in accordance with U.S.S.G. § 2K2.1(b)(6)(B). Fritts objected to this enhancement, claiming that the shotgun was not found near drugs or drug manufacturing materials. Fritts repeats this argument on appeal and asserts that the district court abused its discretion in applying the enhancement.

Section 2K2.1(b)(6)(B) provides for a four-level increase of the base offense level if the defendant "possessed any firearm or ammunition in connection with another felony offense . . . ." To apply the enhancement, "the district court must find that the government has established by a preponderance of the evidence that the defendant (1) committed another felony, and (2) used or possessed a firearm in connection with that offense." *United States v. Jones*, 470 Fed. App'x 477, 480 (6th Cir. 2012) (citing *United States v. Mojica*, 429 Fed. App'x 592, 594 (6th Cir. 2011)). The term "'in connection with' under § 2K2.1 has the same meaning as 'in relation to' under 18 U.S.C. § 924(c)(1), which sets out mandatory minimum sentences for 'any person who, during and in

---

[6]The Government attempts to justify the enhancement by imputing the possession of the shotgun by a coconspirator to Fritts. *See United States v. Catalan*, 499 F.3d 604, 607 (6th Cir. 2007) ("possession of a gun by one coconspirator is attributable to another coconspirator if such possession constitutes reasonably foreseeable conduct" (quotations omitted)). We need not address the Government's analysis because the enhancement is appropriately based on Fritts's own possession of the firearm, as contemplated by the district court at the sentencing hearing.

relation to any . . . drug trafficking crime . . . uses or carries a firearm.'" *United States v. Davis*, 372 Fed. App'x 628, 630 (6th Cir. 2010) (citing *United States v. Moore*, 239 Fed. App'x 137, 140 (6th Cir. 2007)); *see United States v. Hardin*, 248 F.3d 489, 497 (6th Cir. 2001). Under § 924(c)(1), for a firearm to be used "in relation to" a drug-trafficking crime, it must facilitate, or have the potential of facilitating, the drug offense. *Hardin*, 248 F.3d at 497-98. Therefore, when a firearm "facilitated, or had the potential to facilitate, a drug transaction, § 2K2.1(b)(6) is satisfied." *Davis*, 372 Fed. App'x at 630; *see* U.S.S.G. § 2K2.1 app. note 14(A).

"In other words, the government must prove that 'the connection between the firearm and the other felony was not merely coincidental, that the firearm served some purpose in relation to the other offense, such as embolden[ing] the defendant in committing it.'" *Jones*, 470 Fed. App'x at 480 (quoting *United States v. Berkey*, 406 Fed. App'x 938, 939 (6th Cir. 2011)). Significantly, § 2K2.1(b)(6) "is broad enough to cover the sale of firearms as part of a drug deal, even if there is no increased risk of violence." *Davis*, 372 Fed. App'x at 630; *see United States v. Bullard*, 301 Fed. App'x 224, 227-28 (4th Cir. 2008) (sale of firearm facilitated drug deal); *United States v. McGill*, 139 Fed. App'x 201, 204 (11th Cir. 2005) (enhancement upheld because firearms sales "part and parcel of [drug] sales"). The burden to show a nexus between the firearm and the other felony is not onerous. *Davis*, 372 Fed. App'x at 629.

It was undisputed that before Fritts took possession of the shotgun that resulted in his felon-in-possession conviction, his brother, Charles, obtained the weapon from Lawrence Hodge, the sheriff of Whitley County, in exchange for oxycodone pills. Fritts admitted that he knew Charles

16

was selling drugs to Hodge. Fritts also testified that he knew Charles had obtained the shotgun from Hodge in exchange for pills.[7]

Furthermore, ample evidence was introduced at trial to show that Fritts and Charles were coconspirators in the oxycodone trade. Fritts was convicted of conspiring to distribute, and distributing, oxycodone. Charles pleaded guilty to distributing oxycodone.[8] Fritts and Charles both peddled pills from Ted Ball Road where the brothers lived in neighboring trailers. They sold pills to the same customers. Nelson and Kanter each testified that when they could not obtain drugs from Charles, they would go to Fritts. Nelson testified that Fritts was "usually there" when he purchased drugs from Charles. Fritts was familiar with the details of Charles's drug activities, *e.g.*, his sale of oxycodone pills to the sheriff and his receipt of the shotgun in exchange for pills. Finally, as discussed, Fritts played an instrumental role in helping Charles monetize the shotgun—the proceeds of a drug sale—by converting it into cash.

Because Fritts's coconspirator brother obtained the shotgun in exchange for drugs as part of the conspiracy, Fritts is responsible for the transaction. "[A] defendant is responsible for 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal

---

[7]Fritts testified: "Charles Fritts was supposedly practically letting Lawrence Hodge have pills, our sheriff. I pulled up one day, our sheriff was sitting there. He said, 'I let your brother have a gun.' I said, 'What kind of gun?' Me and him got to talking. And he showed me the gun, the reason I knowed so much about the gun, the high sheriff showed me the gun. That's the reason I know it had 137 on it. But, you know, I can't help when the sheriff showing me a gun, letting me touch it here, you know, look at this. It went on from there. All right. My brother come up to me and said he bought that gun."

[8]Charles pleaded guilty to a substantive offense of distribution. The Government agreed to dismiss several charges against Charles, including the charge of conspiracy to distribute oxycodone, in return for his plea of guilty for his distribution and felon-in-possession charges.

activity.'" *United States v. Kennedy*, 714 F.3d 951, 960-61 (6th Cir. 2013) (quoting U.S.S.G. § 1B1.3(a)(1)(B)). The transaction with Hodge was reasonably foreseeable—Fritts knew that his brother was selling drugs to the sheriff and he knew that the shotgun was received as a form of payment. With this knowledge, he then participated in the sale of the shotgun to West.

In view of the "broad" and "expansive" reading courts have given § 2K2.1(b)(6), the district court did not err in applying the enhancement in this case. *Davis*, 372 Fed. App'x at 630; *McGill*, 139 Fed. App'x at 203. The two requirements to apply the enhancement were both met. *See Jones*, 470 F. App'x at 480. First, Charles committed "another felony" when he obtained the shotgun from the sheriff in exchange for drugs, and this action can be attributed to Fritts in light of the brothers' conspiracy. *Id*. Second, Fritts then took actual or constructive possession of the shotgun when he handed it off to West. *Id*. The shotgun unquestionably "facilitated, or had the potential to facilitate, a drug transaction . . . ." *Davis*, 372 Fed. App'x at 630; *see* U.S.S.G. § 2K2.1 app. note 14(A). Its presence was not a coincidence; the weapon was the fruit of a drug deal for which Fritts was responsible,[9] and Fritts's handling of the firearm was essential in allowing the drug deal to realize a positive cash benefit.

---

[9]It does not matter that Fritts was not charged with this drug transaction. The term "another felony offense" within the meaning of § 2K2.1(b)(6)(B) means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 app. note 14(C).

Therefore, although we do not hold that § 2K2.1(b)(6)(B) would apply anytime a coconspirator possesses a gun while engaging in relevant conduct, we conclude that the district court did not abuse its discretion in applying the four-level enhancement.

### III.  CONCLUSION

Based on the above, we affirm the district court's judgment of convictions and sentence.